**Leslie F. WALKER, Jr., Appellant,**

v.

**Ray WALKER et al., Appellees.**

**No. 6914.**

Court of Civil Appeals of Texas, El Paso.

July 9, 1980.

Rehearing Denied Aug. 13, 1980.

Coffee & Coffee, John R. Coffee, Big Spring, for appellant.

Weaver & Ferguson, R. H. Weaver, John T. Ferguson, Big Spring, for appellees.

## OPINION

STEPHEN F. PRESLAR, Chief Justice.

This is a suit in trespass to try title, seeking the recovery of title and possession to an undivided one-third interest in a section of land in Martin County, Texas. Plaintiff also seeks an accounting for one-third of the bonuses, delay rentals, and royalties received by Defendants during their possession and control of the land in question. Trial was to a jury and, based on their verdict, judgment was rendered for the Defendants. We affirm.

Speaking of the parties as they appeared in the trial Court, record title was in the Defendants, Mona Lue Walker Tonn and her brother, Ray Walker. The land was devised to them as a specific bequest under the will of their father, Leslie Walker. Plaintiff's claim of title is for an undivided one-third interest which he alleges evolves from his status as an after-born pretermitted heir pursuant to the operation of Section 66 of the Texas Probate Code, and Plaintiff alleges that he is the legitimated child of a putative marriage between his mother, Juanita, and Leslie Walker.

Six Special Issues were submitted to the jury, and they found by Issue No. 1 that a marriage between Juanita and Leslie, Sr. was entered into in good faith. The jury deadlocked and was unable to answer Issues 2 and 3 which asked if Leslie F. Walker was the father of Leslie F. Walker, Jr.; and, if the jury so found, then did Leslie Walker ever recognize Leslie F. Walker, Jr. as his child. By Issues 4, 5 and 6, the jury found for the Defendants on the three, ten, and twenty-five-year statutes of limitations. On that verdict, the trial Court entered judgment for the Defendants.

The first three issues involve Plaintiff's proof of his title by inheritance, and Plaintiff presents points of error concerning them. We will not discuss these points of error for the reason that we conclude the judgment is correct because of the jury findings of limitations. No purpose would be served by deciding such points of error for, even if we determined that Plaintiff established title by inheritance, we would still have to uphold the judgment because of the findings that Defendants had title under the statutes of limitations.

Plaintiff attacks the limitations findings by an assignment of error that the Plaintiff inherited an undivided one-third interest in the section of land in controversy, becoming a tenant-in-common with Defendants, and, therefore, it became necessary for the Defendants to show notice of repudiation of the cotenancy before adverse possession could begin to run, and, by second point of error, he asserts that, notice of repudiation not having been shown, the Court erred in rendering judgment for the Defendants on the jury's affirmative findings on the issue of limitations.

In *Todd v. Bruner*, 365 S.W.2d 155 (Tex. 1963), the Supreme Court reiterated the general rule of the settled law in this State that "[t]he possession of a cotenant or a tenant in common will be presumed to be in right of the common title. He will not be permitted to claim the protection of the statute of limitations unless it clearly appears that he has repudiated the title of his cotenant and is holding adversely to it,"

citing *Phillipson v. Flynn*, 83 Tex. 580, 19 S.W. 136 (1892); *Poenisch v. Quarnstrom*, 361 S.W.2d 367 (Tex.1962). In the case before us, the Court did not submit an issue on notice of repudiation, but covered the matter with an instruction in the charge. Plaintiff does not assign error in this method of submission. He asserts that there is no evidence of repudiation and asks for rendition of the judgment, so our task is to determine if there is any evidence to support the jury findings which, under the Court's instructions, *includes repudiation.*

This suit was brought some thirty-one years after Defendants inherited the land in question. They were minors at the time of the inheritance, and their father's will provided for a trustee to hold the property during their minority, and, at all times during the thirty-one years, the property was farmed either by the trustee or leased by him to others until Ray Walker became an adult and started farming it. The taxes were paid each year by the Defendants or their trustee. Defendants' possession and use of the land, then, was open and notorious at all times during the thirty-one years. Plaintiff and his mother both testified that she told him all of his life, beginning when he was a small boy, that his daddy owned a farm in Martin County and that he was entitled to one-third of it. In 1960, his mother went to the Martin County Courthouse and visited with the sheriff to check on the property. In 1967, Plaintiff made a trip to the area "to check on my inheritance." He became acquainted with the Defendants at that time and again in 1968, when he spent a summer working for the brother of Leslie Walker. During these visits, he made no mention of any claim to the property and Defendants testified that they had no knowledge of any claim until suit was filed. There is a long line of cases holding that such a fact situation constitutes constructive notice of a repudiation of cotenancy. *Moore v. Knight*, 127 Tex. 610, 94 S.W.2d 1137 (1936), where the Court said:

It is not necessary that actual notice of an adverse holding disseizin be brought home to a cotenant. Such notice may be constructive, and will be presumed to have been brought home to the cotenant when the adverse occupancy and claim of title is so long-continued, open, notorious, exclusive, and inconsistent with the existence of title in others, except the occupant, that the law will raise the inference of notice to the cotenant out of possession; or the jury may rightfully presume such notice.

The Court cited the case of *Illg v. Garcia*, 92 Tex. 251, 47 S.W. 717 (1898):

Certainly, repudiation of the claim of a co-tenant, and notice thereof, may be shown by circumstances; and in cases like this, after all the parties are dead, the jury may infer such facts from long-continued possession under claim of exclusive ownership and nonassertion of claim by the other tenant.

The *Moore v. Knight* Court went on to say that there are many cases wherein findings of notice to a cotenant of adverse possession by another cotenant have been sustained in the circumstances of the cases, citing *Rae v. Baker*, 38 S.W.2d 366 (Tex.Civ.App.—Austin 1931, writ ref'd); *Williams v. Pure Oil Company*, 49 S.W.2d 846 (Tex.Civ.App.—Dallas 1932), aff'd 124 Tex. 341, 78 S.W.2d 929 (Tex.Com.App.1935); *Burton v. Thornton*, 67 S.W.2d 890 (Tex.Civ.App.—Galveston 1933, writ dism'd); *Chestnut v. Casner*, 42 S.W.2d 175 (Tex.Civ.App.—Austin 1931, writ ref'd); *Wallis v. Long*, 75 S.W.2d 138 (Tex.Civ.App.—Galveston 1934, writ ref'd); and see: *Vasquez v. Meaders*, 156 Tex. 28, 291 S.W.2d 926 (1956). The Supreme Court followed *Moore v. Knight* and quoted from it the rule which we have quoted above, and said: "For other cases announcing the same rule see *Mauritz v. Thatcher*, Tex.Civ.App., 140 S.W.2d 303, wr. ref.; *Rae v. Baker*, Tex.Civ.App., 38 S.W.2d 366, wr. ref." A more recent case following the rule is *Page v. Pan American Petroleum Corporation*, 412 S.W.2d 797 (Tex.Civ.App.—Houston 1967, writ ref'd n. r. e.), cert. denied 389 U.S. 1042, 88 S.Ct. 783, 19 L.Ed.2d 832.

In *Todd v. Bruner*, supra, the Supreme Court took note of *Moore v. Knight* and *Vasquez v. Meaders*, and said that the case

before it did not come under the rule of those cases because the tenants out of possession had been active in the ownership by executing oil and gas leases and easements on the property. The Court said:

> The time period involved and the absence of a showing of nonclaimer fully distinguishes *Moore v. Knight* and *Vasquez v. Meaders*, 156 Tex. 28, 291 S.W.2d 926 from the case presently before us.

In the case before us, there is other evidence which amounts to notice of repudiation. As early as 1950, the trustee executed an oil and gas lease covering the property and, in 1966, the Defendants executed an oil and gas lease in which they warranted that title was in them. This lease and others, and extensions of such leases, were all placed of record in the Deed Records of Martin County. *Brown v. Phillips Petroleum Company*, 144 S.W.2d 358 (Tex.Civ.App. —Fort Worth 1940, no writ), held the execution of an oil and gas lease and placing it of record as being sufficient to set in motion the statute of limitations of one cotenant against the other. Also, in the case before us, Defendant Mona Lue Walker Tonn executed a deed to Ray Walker conveying one-half of the surface estate to him. This sale of the one-half interest amounted to the sale of a portion of that claimed by Plaintiff, and amounts to a repudiation of his title. *Moore v. Knight*, supra; *Strong v. Garrett*, 148 Tex. 265, 224 S.W.2d 471 (1949). In 1970, drilling for oil and gas commenced, and this occupation of the premises by strangers, together with their recorded oil and gas leases, is further notice of repudiation. This suit was brought in 1975. In her conveyance to Ray Walker, Mona Lue Walker Tonn reserved the minerals, and the two of them have shared equally in all delay rentals, bonuses, and royalties paid under the oil and gas leases.

From the above, it is apparent that there is some evidence to support the jury finding. The judgment of the trial Court is affirmed.